UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAWN STEWART,

                                                    Plaintiff,

            vs.

POLICE OFFICER STEPHANIE DAVIS AND POLICE OFFICER BRIAN HIRSCHMAN,

                                                    Defendants


PLAINTIFF SHAWN STEWART'S MEMORANDUM IN OPPOSITION TO DEFENDANTS RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW


                                                          Stoll, Glickman & Bellina, LLP
                                                          by Andrew B. Stoll
                                                          Plaintiff's Counsel
                                                          300 Cadman Plaza West, 12th Floor
                                                          Brooklyn, NY  11201


**ORAL ARGUMENT IS REQUESTED**

## **TABLE OF AUTHORITIES**

**CASES**

*Dancy v. McGinley*, 843 F.3d 93 (2d Cir. 2016)................................................................ 1, 2, 3, 5
*Jenkins v. City of New York* , 478 F.3d 76 (2d Cir. 2007) ............................................................ 1
*Jones v. Treubig*, 963 F.3d 214 (2d Cir. 2020) ............................................................................ 1
*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996). ....................................................... 6
*United States v. Freeman*, 735 F.3d 92 (2d Cir. 2013).................................................................. 5
*United States v. Mendenhall*, 446 U.S. 544 (1980)...................................................................... 1
*United States v. Walker*, 965 F.3d 180 (2d Cir. 2020)................................................................. 3

A Rule 50(a) motion for judgment as a matter of law may be entered against a party "only if a reasonable jury would not have a legally sufficient basis to find for a party on that issue." *Dancy v. McGinley*, 843 F.3d 93, 105 (2d Cir. 2016).  A reviewing court "must consider the evidence in the light most favorable to the party against whom the motion was made and ... give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020).  In deciding qualified immunity on a reasonable suspicion issue, it is important to note that "arguable probable cause should not be misunderstood to mean almost probable cause." *Jenkins v. City of New York* , 478 F.3d 76, 87 (2d Cir. 2007) (quotation marks omitted). "If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer."  The same is plainly true of reasonable suspicion.

Although Plaintiff believes that the defense has failed to raise a genuine qualified immunity defense that applies to any point in the interaction between him and defendants, it is helpful to break the matter into three separate periods of time: the initial stop of Plaintiff,  the questioning of Plaintiff, and the continued detention after Defendants, by their own admission, did not believe he was involved in the crime they were investigating.

In the light most favorable to Plaintiff, a reasonable person would not have felt free to leave from the moment the officers encountered him, as he testified they were aggressive off the bat- which must, respectfully, be credited. 37:8-13; 106:17-20.  A jury could readily find this description supported by the video footage, in which the first defendants could be heard, they were simultaneously hammering Plaintiff with unequivocal demands for his ID and questions about where he was coming from.  *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (police

seizure suggested by "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). And Officer Davis herself conceded, in a prior statement that is admissible as a party admission, that she did not suspect Plaintiff of any criminality at the time she was demanding his ID. 185:11-17. Officer Hirschman, too, conceded that it was not until one minute and 13 seconds in to the video, when Plaintiff turned around and put hands behind back, that he felt Plaintiff was part of the dispute he was there to investigate. 276:25-277:12; 279:9-20.

The conclusion the defense asks the Court to draw is thus simple and stark: where officers receive a report of a domestic incident committed by a male some time within the past two hours in one of 13 apartments on the floor of a building, they can reasonably believe they have reasonable suspicion to forcibly stop any male getting on the elevator on that floor. *Defendants' Memorandum of Law*, p. 14. Everything else raises a disputed issue of fact that the Court must, respectfully, resolve in Plaintiff's favor.

In *Dancy v. McGinley* officers received a radio call for a robbery committed by a "[t]hin black male, brown jacket" which had been committed "nearby". *Dancy v. McGinley*, 843 F.3d 93, 99-101 (2d Cir. 2016). The officers quickly came upon two black males; one "somewhat matched" the suspect's description and both "looked over their shoulders numerous times". *Id* at 101. The Court held that the description—"thin, black, and male—is too vague in the circumstances here to justify a stop of anyone meeting it". *Dancy v. McGinley*, 843 F.3d 93, 109 (2d Cir. 2016). Like with Mr. Stewart, the detainees in *Dancy* were stopped close to the alleged crime scene; unlike with Mr. Stewart, the detainees in *Dancy* were stopped just *minutes* after the alleged crime. *Dancy v. McGinley*, 843 F.3d 93, 109 (2d Cir. 2016). Nevertheless, The Second Circuit held the description was "hardly a basis" for the stop, and the "proximity was innocuous given the

unremarkable nature of the area in question... [i]t would not have been unusual to find a thin, black male in downtown Poughkeepsie that Friday evening… the description fit too many people to constitute sufficient articulable facts on which to justify a forcible stop". *Dancy v. McGinley*, 843 F.3d 93, 109-10 (2d Cir. 2016).  The Court further wrote " 'thin black male, brown jacket' was hardly a basis for stopping these two teenagers." *Dancy v. McGinley*, 843 F.3d 93, 109 (2d Cir. 2016).

The description before the Court here is substantially vaguer than even that in *Dancy*- in fact, it was a male suspect, and nothing more.  The alleged timing of the alleged crime is substantially more attenuated than in *Dancy*- here, the incident was some time within the past two hours- in *Dancy*, it was mere minutes earlier.  186:12-16; 219:15-23.  In fact, Officer Davis testified that an incident that occurred in the past, as this radio run referred to, "could be anything"- IE, any time in the past.

The Second Circuit continued to emphasize its concern with vague suspect identifiers and proximity to a crime in *United States v. Walker*, 965 F.3d 180 (2d Cir. 2020).  There, as in Dancy, the description was far more specific than present here ("black male, medium-to-dark skin tone, glasses, facial hair, and long hair")—yet the Court found it "fit too many people to constitute sufficient articulable facts on which to justify a forcible stop." *Id.* at 187.  The fact that the suspect was walking near the crime scene failed to move the needle into reasonable suspicion since "such proximity was innocuous given the unremarkable nature of the area in question." *Id.*  The Second Circuit noted it had "little trouble" concluding lack of reasonable suspicion, citing an "extreme lack of reasonable suspicion". *Id.* at 189.

Although the defense purports to point to "flight" as an additional factor supporting the stop here, there is substantially less evidence of flight here than in *Dancy*.  Unlike in *Dancy*, the

3

defendants here had no idea when the alleged crime occurred, conceding it could have been as long as two hours before they received the radio call (and thus two hours and fifteen minutes because it took them fifteen minutes to arrive. 175:22-25). So it is unclear how they could conclude Plaintiff was fleeing. They pointed to nothing other than a person waiting for an elevator as evidence of flight. Whereas officer Hirschman testified he had "training about people fleeing domestics", 240:12-20, there was no evidence that such flight occurs more frequently in domestic violence cases than with any other sort of crime, and indeed, any such inference would be counter intuitive- certainly compared with a street robbery of the sort alleged in *Dancy*. To interpret Plaintiff's actions here as evidence of flight would be to deem any person in any sort of proximity to any crime, moving in any direction away from that crime in any manner whatsoever, as "flight." It makes the term virtually meaningless. Finally, Officer Hirschman conceded he hadn't even determined that Plaintiff was fleeing. 241:4-10.

In sum, Plaintiff was seized virtually from the moment the elevator doors opened, based on nothing more than being a male awaiting an elevator in a large apartment complex within two and a quarter hours of when a male was involved in a domestic dispute in an apartment on the same floor.

After the initial seizure, defendants point to Plaintiff's assertion he was coming from an apartment as further justification to detain him, because they were investigating a crime that occurred in an apartment. Of course, it is hard to imagine where else someone would be coming from as they await an elevator on the 16th floor of an apartment building. In fact, it is hard to imagine a less damning response. And as the officers testified, the fact his ID did not list an apartment in the building was probative of nothing. At the time Plaintiff said "an apartment", he pointed in the opposite direction of the apartment the officers were there to investigate.

4

After that, the defense appears to attempt to bootstrap Plaintiff's understandable defensiveness in the face of the officers' hostility into a basis for reasonable suspicion. But of course, the law is clear that "a refusal to cooperate does not create reasonable suspicion where it does not otherwise validly exist." *United States v. Freeman*, 735 F.3d 92, 102 (2d Cir. 2013). This is consistent with the maxim that "a valid *Terry* stop must also be justified at its inception." *Dancy v. McGinley*, 843 F.3d 93, 106-07 (2d Cir. 2016) (citations and quotations omitted).

The next issue defendants point to is Plaintiff's purported "consent" to be handcuffed. But the handcuffing at this point is a distraction- it ignores that Plaintiff was already, plainly, seized; that a reasonable person, innocent of any crime, would not have felt free to leave, handcuffs or none. In any case, Officer Davis was explicit that she was giving Plaintiff an ultimatum when she asked Plaintiff if he wanted to be handcuffed. 159:7-10.

Finally the defense argues that the duration of the detention was arguably reasonable under the circumstances. What they fail to recognize is that Plaintiff's argument is not simply that the length of the detention was unreasonable. It's that any continued detention, even if initially justified, was unreasonable after the officers had determined that Plaintiff was not involved in the incident they were investigating. A host of evidence supports the conclusion they concluded just that: Officer Davis was on the phone with her Lieutenant fifteen minutes after the seizure telling her she did not suspect Plaintiff of being involved in the crime they were investigating. 210:3-212:4. Several colleagues of Plaintiff's had come out and advised the officers Plaintiff worked for them. Officer Davis said she continued to detain Plaintiff at that point not because she had reasonable suspicion, but because "I still didn't know what was going on, and he was very combative, and upset, angry. And usually, if you take the cuffs off at that part, they get violent towards us. And since we already -- I was having a supervisor come, I was just trying to keep it

5

safe for all of us." 146:10-21.  This could reasonably be interpreted by a jury as a concession that she no longer had reasonable suspicion but was holding Plaintiff for other reasons.  Even if she backtracked from that later, the question is whether the jury could reasonably have rejected that backtracking.

Case law is clear that probable cause can "dissipate" where "the groundless nature of the charges [is] made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).  Here, the very reason defendants claimed they detained Plaintiff- because he wouldn't identify the apartment he was coming from- was cured by Plaintiff's colleagues identifying the apartment as other than the one the officers were headed to.  Defense counsel and defendants repeatedly asserted Plaintiff was detained because he wouldn't identify where he was coming from.  20:14; 83:9-12; 145:20-146:21; 158:12-14; 265:4-8; 350:22.  That was no longer the case, and Officer Davis then turned the law requiring reasonable suspicion on its head, saying at that point she detained Plaintiff "because I couldn't rule him out".  211:5-8.

## CONCLUSION

Defendants stopped Plaintiff on the barest of hunches, and his presence waiting for an elevator in a huge residential building where a crime was allegedly committed by a male some unidentified time in the past could not reasonably be viewed by a police officer as a legal basis for a forcible detention.  Defendants' motion should, respectfully, be denied.