UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

SHAWN STEWART


                               Plaintiff,                    Docket No.: 22-CV-3583
                                                                   (JSR)
            -against-

POLICE OFFICER STEPHANIE DAVIS, SHIELD # 28218,
POLICE OFFICER BRIAN HIRSCHMAN, SHIELD # 22623,


                             Defendants/Third Party-Plaintiffs,

THE CITY OF NEW YORK,

                             Third-Party Defendants.

------------------------------------------------------------------------ x




**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT NEW YORK CITY POLICE OFFICER STEPHANIE DAVIS AND BRIAN HIRSCHMAN'S MOTION FOR A JUDGMENT AS A MATTER OF LAW, PURSUANT TO RULE 50 OF THE FEDERAL RULES OF CIVIL PROCEDURE, GRANTING THEM QUALIFIED IMMUNITY.</u>**








Doug LaBarbera, Esq

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 1

POINT I.

    THERE WAS ARGUABLE REASONABLE SUSPICION
    JUSTIFYING PLAINTIFF'S DETENTION. ............................................................. 1

POINT II.

    IT WAS REASONABLE FOR THE OFFICERS TO BELIEVE
    THE SCOPE OF PLAINTIFF'S DETENTION WAS LAWFUL. .............................. 5

CONCLUSION ................................................................................................................ 6

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                      **<u>Page(s)</u>**

<u>Brosseau v. Haugen,</u>
    543 U.S. 194 (2004). ................................................................................................. 2

<u>Coollick v. Hughes,</u>
    699 F.3d 211 (2d. Cir. 2012). .................................................................................... 6

<u>Dancy v. McGinley,</u>
    843 F.3d 93 (2d Cir. 2016). .................................................................................. 3, 4

<u>Muehler v. Mena,</u>
    544 U.S. 93 (2005). ..................................................................................................... 2

<u>United States v. Bayless,</u>
    201 F.3d 116 (2d Cir. 2000). ...................................................................................... 4

<u>United States v. Compton,</u>
    830 F.3d 55 (2d Cir. 2016). ........................................................................................ 4

<u>United States v. Freeman,</u>
    735 F.3d 92 (2d Cir. 2013). ........................................................................................ 4

<u>United States v. Mendenhall,</u>
    446 U.S. 544 (1980). ................................................................................................... 1

<u>United States v. Sharpe,</u>
    470 U.S. 675 (1985). ................................................................................................... 6


**<u>Statutes</u>**                                                                                                 **<u>Page(s)</u>**

Fed. R. Civ. P. 50 ............................................................................................................. 1, 6

## PRELIMINARY STATEMENT

By Notice of Motion dated May 14th, 2024, Defendant New York City Police Officers Stephanie Davis and Brian Hirschman ("Officers Davis and Hirschman" or "the Officers") moved for and Order, pursuant to Rule 50 of the Federal Rules of Civil Procedure, granting judgment as a matter of law that the Officers are entitled to Qualified Immunity.  (ECF Document # 70)  Plaintiff filed his Opposition on May 28th, 2024. (ECF Document # 73)  The Officers now respectfully submit this Reply Memorandum of Law in further support of their motion.

## ARGUMENT

## POINT I.

## THERE WAS ARGUABLE REASONABLE SUSPICION JUSTIFYING PLAINTIFF'S DETENTION.

Respectfully, nothing contained in Plaintiff's opposition should dissuade the Court from holding there was arguable reasonable suspicion to detain Plaintiff.

Plaintiff's reliance on United States v. Mendenhall, 446 U.S. 544, 556 (1980), is misplaced.  First, to be clear, in Mendenhall, the Supreme Court referred to "the use of language or tone of voice indicating compliance with the officer's request might be compelled" as an example of a circumstance that "**might** indicate a seizure." (emphasis added)  Furthermore, the Court in Mendenhall found there was no seizure notwithstanding the dicta Plaintiff cites.  Second, the Supreme Court was considering whether there was in fact reasonable suspicion, in the context of a suppression hearing, not whether there was arguable reasonable suspicion supporting Qualified Immunity.  Finally, as referenced in the moving papers, the Supreme Court has also held that "even when officers have no basis for suspecting a particular individual, they

may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." Muehler v. Mena, 544 U.S. 93, 101 (2005).

Plaintiff's contention that arguable reasonable suspicion was lacking since he was seized "from the moment the officers encountered him," ignores the fact that he admitted that the first thing he told the officers was that he was coming from an apartment. (Declaration of Douglas LaBarbera Exhibit A- Trial Transcript "TT" 74:7-9) This information was vital to the Officers' concern that Plaintiff was involved in the call they were there to address. Assuming *arguendo* Plaintiff was seized at that moment, the Officers still had arguable reasonable suspicion since (1) they were looking for a male; (2) Plaintiff was a male at the location they reasonably believed the call came from; (3) Plaintiff was attempting to leave the location; and (4) Plaintiff stated he was coming from his apartment which is where the domestic incident took place. Furthermore, Plaintiff's evasive conduct after the fact which served to reinforce and heighten the Officers' suspicion. Of course, the relevant dispositive inquiry is not whether there was in fact reasonable suspicion at the moment Plaintiff was seized, but, whether it was clear, "to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 200 (2004). Given the totality of the circumstances, Officers of reasonable competence could disagree as to whether it was lawful to seize Plaintiff, even if the seizure occurred at the moment Plaintiff suggests, entitling the Officers to Qualified Immunity.

The totality of the evidence supports the conclusion that Plaintiff was seized when he was handcuffed. The testimony of the Officers that Plaintiff cites in support of his argument that reasonable suspicion was lacking, is a red herring. Plaintiff cites Officer Davis' CCRB testimony that when she asked Plaintiff for identification, she did not suspect him of criminality. But this testimony is only probative if Plaintiff was seized at that moment. Officer Davis testified that

2

she did not have an opportunity to review her body camera footage to clarify the timeline of events before she gave a statement to the CCRB.  When Officer Davis was asked, for the first time at trial, whether Plaintiff was free to walk away until the point he was placed in handcuffs she testified he was.  (TT 190:13 to 191:15)

Plaintiff's reliance on <u>Dancy v. McGinley</u>, 843 F.3d 93 (2d Cir. 2016), is also misplaced because it is distinguishable on the facts.  The officers' justification for stopping plaintiff in <u>Dancy</u> were plaintiff's presence in the company of another person who met the description of suspect, proximity in time and space to the crime, and the fact that plaintiff looked over his shoulder as the officers were following him.  Here, the Officers articulated more specific facts that informed their decision to detain Plaintiff.  For example, unlike in <u>Dancy</u>, here, the Officers articulated on the video that they were concerned Plaintiff was fleeing the call they were there to address.  In <u>Dancy</u>, the Second Circuit never considered Plaintiff's flight as a factor when it considered whether there was arguable reasonable suspicion because the Officers never raised it as a justification.  Second, Plaintiff ignores the most essential fact that heightened the Officers' suspicion, that the first thing Plaintiff stated was that he was coming from an apartment.  If the plaintiff in <u>Dancy</u> had voluntarily told the officers he was coming from a deli, the court may very well have reached a different conclusion.[1]  Furthermore, unlike here, in <u>Dancy</u>, the Court held that Plaintiff and his companion did not "exhibit nervous or evasive behavior of any kind" and noted that the Officer "did not suggest that they appeared nervous, attempted to conceal anything, changed direction, ran away, quickened their pace, or made furtive gestures."  <u>Dancy</u>, 843 F.3d at 110.  It bears repeating that the relevant question "[i]n assessing the reasonableness

---

[1] In <u>Dancy</u>, the Officers were investigating a 911 call for a robbery in a deli. <u>Dancy</u>, 843 F.3d at 101.

of an officer's suspicion, requires taking into account the totality of the circumstances and we must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."  United States v. Compton, 830 F.3d 55, 61 (2d Cir. 2016) (*citing* United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000).  Unlike in Dancy, here, the video makes clear that Plaintiff was leaving the location of the incident, acted evasively in response to the Officers' questions, and lied to them about his conduct.  Similarly, United States v. Walker, 965 F.3d 180, 186 (2d Cir. 2020), which Plaintiff also cites in his opposition, is distinguishable on the facts given Officers Davis and Hirschman articulated more facts supporting their belief that Plaintiff's detention was lawful.  In Walker, "[t]he justification for the stop revolved around an emailed photograph of an individual, who [the officer] claimed was a suspect in a recent shooting and looked like the defendant," and the fact that Plaintiff was in close proximity to the crime scene."  Walker, 965 F.3d at 186.  By contrast, here, Officers Davis and Hirschman have articulated their belief that there was reasonable suspicion was premised on the fact that Plaintiff was at the location of the altercation, that they were concerned he was fleeing, that he stated he was coming from an apartment, which they knew was the type of place in which an altercation occurred, and that he acted in an evasive manner that was inconsistent with innocence.

Plaintiff's continued reliance on United States v. Freeman, 735 F.3d 92, 102 (2d Cir. 2013) is also misplaced.  It is crystal clear from the body-camera footage and from the record that Plaintiff was not seized simply because he refused to answer questions but because of the totality of the interaction that preceded the use of handcuffs.

For the reasons set forth above and in Point I. of the Officers' moving papers, it is respectfully submitted that there was arguable reasonable suspicion to detain Plaintiff, entitling them to Qualified Immunity on Plaintiff's search and seizure claim.

## POINT II.

### IT WAS REASONABLE FOR THE OFFICERS TO BELIEVE THE SCOPE OF PLAINTIFF'S DETENTION WAS LAWFUL.

It is clear from the totality of the circumstances that it was reasonable for the Officers to believe it was lawful to continue to detain Plaintiff even after there was some indication that he worked at the location of the incident.

Plaintiff admitted on cross-examination that he never told Officers Davis and Hirschman that he worked in the building.  (TT 107:4-6)  Plaintiff's words and conduct while he was handcuffed suggested to the Officers that he lived in the building.  (TT 136:4-19)  At a minimum, Plaintiff's words, and his refusal to cooperate, created a confusing situation leading the Officers to reasonably believe they should continue to detain Plaintiff while the other officers searched for the complainant.  Plaintiff also admits he never told the Officers he was not involved in the dispute or told them he was coming from the specific apartment where his office was located.  Plaintiff's contention that the officers knew reasonable suspicion had dissipated since there was some indication Plaintiff worked there, and was therefore not involved, is contradicted by the record.  When asked directly, Officer Davis testified that even after she was led to believe Plaintiff was employed at that location, she kept him detained <u>both</u> because she could not rule Plaintiff out as a suspect and because she had other concerns.  (TT 210:18 to 212:14)  Officer Davis testified that even at that moment she could not be sure Plaintiff was not involved and that Officers Sugrim and Vargas were continuing to investigate. <u>Id.</u>  Likewise, Officer Hirschman

testified notwithstanding there was some information that Plaintiff worked there, because of Plaintiff's behavior and his answers to questions when, Officer Hirschman reasonable believed they needed more certainty before releasing him.  (TT 260:9-19)

As mentioned in the Officers' moving papers, when considering the scope of a detention, the Supreme Court has weighed whether "the suspect's actions contribute to the added delay about which he complains."  United States v. Sharpe, 470 U.S. 675, 688 (1985).  Plaintiff refused to tell any police officer that he worked in the building and now complains that the Officers should have known he did and released him.  Respectfully, the Court should not countenance Plaintiff's gamesmanship.  The purpose of Qualified Immunity is to protect Officers who make reasonable but mistaken judgements about what is lawful when performing discretionary functions.  As the Second Circuit has explained, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Coollick v. Hughes, 699 F.3d 211, 221 (2d. Cir. 2012).  Plaintiff intentionally created a situation rife with confusion and uncertainty with his words, conduct, and recalcitrance.  Even if the Officers were ultimately mistaken that it was lawful to continue to detain Plaintiff until Lt. Cruz arrived, that mistake was reasonable given the totality of the circumstances.

As such, it was reasonable for The Officers to believe that the scope of Plaintiff's detention was lawful, entitling them to Qualified Immunity.

## **CONCLUSION**

For the reasons set forth above and in their moving papers, Defendant New York City Police Officers Stephanie Davis and Brian Hirschman, respectfully request the Court enter an Order, pursuant to Rule 50 of the Federal Rules of Civil Procedure, granting them a judgment as

a matter of law based upon Qualified Immunity, on Plaintiff's unlawful search and seizure claim,

together with such other and further relief as the Court deems just and proper.

We thank the Court for its time and consideration of this matter.

Dated:  New York, NY
          June 4th, 2024

                                        Respectfully Submitted

                                        _____/s/_____
                                        BY: Douglas LaBarbera (DL 6212)
                                        LABARBERA & ASSOCIATES
                                        Attorneys for Defendants Davis & Hirschman
                                        111 John Street, Suite 640
                                        New York, NY 10038

CC:     **VIA ECF**

        Andrew Brian Stoll
        Stoll, Glickman & Bellina, LLP
        Attorneys for Plaintiff
        300 Cadman Plaza West, 12th Floor
        Brooklyn, NY 11201

        Luca DiFronzo
        Hannah Faddis
        New York City Law Department
        Special Federal Litigation Division
        100 Church Street
        Ste 3-216
        New York, NY 10007