

POLICE DEPARTMENT

May 19, 2015

MEMORANDUM FOR: Police Commissioner

      Re: Sergeant ███████
          Tax Registry ███████
          101 Precinct
          Disciplinary Case No. 2014-11639

          Police Officer ███████
          Tax Registry No. 945262
          101 Precinct
          Disciplinary Case No. 2014-11640

    The above members of the Department appeared before me on February 24, 2015, charged with the following:

Disciplinary Case No. 2014-11639

    1. Said Sergeant ███████, on or about October 24, 2012, at approximately 1920 hours, while assigned to the 101st Precinct and on duty, in the vicinity of Beach 20th Street and Cornaga Avenue, Queens, engaged in conduct prejudicial to the good order, efficiency, or discipline of the Department, in that he searched Person A's vehicle without sufficient legal authority.

        PG 203-10, Page 1, Paragraph 5 – PUBLIC CONTACT-
                                    PROHIBITED CONDUCT

Disciplinary Case No. 2014-11640

    1. Said Police Officer ███████, on or about October 24, 2012, at approximately 1920 hours, while assigned to the 101st Precinct and on duty, in the vicinity of Beach 20th Street and Cornaga Avenue, Queens, abused his authority as a member of the New York City Police Department in that he frisked Person A without sufficient legal authority.

        PG 212-11, Page 1, Additional Data – STOP AND FRISK

COURTESY • PROFESSIONALISM • RESPECT

<u>**SERGEANT**</u> ▮▮▮▮▮▮▮▮▮▮▮▮
<u>**POLICE OFFICER**</u> ▮▮▮▮▮▮▮▮  2

The New York City Civilian Complaint Review Board (CCRB) was represented by Jonathan Fogel, Esq., Respondent ▮▮▮▮ was represented by John D'Alessandro Esq., and Respondent ▮▮▮▮ was represented by Craig Hayes, Esq. Respondents, through their counsel, entered pleas of Not Guilty to the charges. The CCRB submitted a transcript of their February 5, 2013, interview of Person A (CCRBX 1A). Respondents testified in their own behalf. A stenographic transcript of the trial record has been prepared and is available for the Police Commissioner's review.

After evaluating the testimony and the evidence presented at the hearing and assessing the credibility of the witnesses, this tribunal finds that the preponderance of the credible evidence did not establish that Respondents engaged in the charged misconduct.

## FINDINGS AND ANALYSIS

The following facts are not in dispute. On October 24, 2012, on or about and between 7:20 p.m. and 7:50 p.m., Person A while knowingly operating a motor vehicle with a broken tail light, drove along Beach 20 Street in the vicinity of Cornaga Avenue in Queens County. He stated, "I pulled over…and I noticed…--some blinking lights behind me. So I looked to my rearview and I see an unmarked [police] car… So I pulled over." (CCRBX 1A, at 3). He left his engine idling. (Tr. 78). Respondent ▮▮▮▮ approached the driver's side of the vehicle and Respondent ▮▮▮▮ approached the passenger side. Person A stated, "I waited until they came, I put my…my hands in my lap….I cracked my window about 25 percent." (CCRBX 1A, at 3). Respondent ▮▮▮▮ asked for Person A's license, registration, and insurance card which he

did not provide. Instead, Person A responded whether there was any particular reason for him being pulled over. Rather than wait for a response, Person A turned his attention to Respondent ███████ who was on the passenger side of the vehicle and had instructed him to roll his window down. Person A rolled his window down another 25 percent to the half way point. (CCRBX 1A, at 4).

Respondent ███████ testified that Person A kept "moving his hands around." (Tr. 82). While still in the car, Person A would reach toward the seat belt, into different areas of the vehicle, and toward his right side, all the while not turning over his identification. (Tr. 83). It was at this point that Respondent ███████ told Person A to step out as Respondent ███████ opened the driver's side door. Respondent ███████ testified that he directed Respondent ███████ to remove Person A from the car for safety reasons. (Tr. 26).

Once Person A exited the vehicle, Respondent ███████ conducted a frisk of his waistline, upper and lower body. He explained that it was done while he was in fear for his safety as well as for everyone else's safety. Person A is then escorted to the rear of the vehicle by Respondent ███████ where he provides either a Patrolmen's Benevolent Association (PBA) or a Detective Endowment Association (DEA) courtesy card to the officers along with his license, registration, and insurance. Respondent ███████r instructed a third officer, Police Officer ███████, to conduct a search of the vehicle while Person A was at the rear of his car. The documents were eventually returned to Person A and he was allowed to enter his car and leave the location.

SERGEANT ███ █████████
POLICE OFFICER ███ █
                                                                                            4

### Search of Person A's Vehicle without Sufficient Legal Authority

At issue is whether Respondent ████████ searched Person A's car without sufficient legal authority. Evidence adduced at trial, however, established that Respondent ████████ did not, in fact, search Person A's car, but instead directed that ████████ search the car. Respondent ████████ testified that prior to him allowing Person A back in the car; he was concerned about the way Person A was moving around prior to his exit. He explained that it was a combination of Person A reaching his hand between the seats, opening the center console, and his belligerence that he directed ████████ to "sweep the general area." (Tr. 31). Respondent ████████ testified that he did not order that the entire vehicle be searched. Rather, he directed the search to the areas in the front where Person A could have reached.

The Court agrees that Person A's own account of his actions was cause for concern. The incident occurred during the night time. Person A did not initially roll down the window as the officers approached. He placed his hands in his lap and did not provide his license, registration, and insurance upon request. When he did decide to roll down the window, he only rolled it down "25 percent." He even questioned the basis for the stop even though he was aware that he was driving with a broken taillight. In addition, Person A must have been moving his body and hands in the car, as observed by the officers, to retrieve his documents. Yet, he never provided the paperwork to the officers as he sat in his car. Considering the time of day the stop occurred, the movement of Person A's hands, and the failure to immediately turn over his documents upon request the officers' level of suspicion must have been raised.

SERGEANT ▇▇▇▇▇▇▇▇
POLICE OFFICER ▇▇▇▇▇▇▇▇

5

Under New York law according to the Court of Appeals, police initiated stops of civilians are to be evaluated pursuant to a four-tier analysis: (1) an officer may request information if the request is "supported by an objective, credible reason, not necessarily indicative of criminality;" (2) the officer may engage in a more rigorous "common law right of inquiry" if he has a "founded suspicion that criminal activity is afoot;" (3) the officer may forcibly stop and detain a civilian if he or she "has reasonable suspicion that the civilian was involved in a crime;" or (4) the officer may make an arrest if there is probable cause to believe a person has committed a crime. *People v. DeBour*, 40 N.Y.2d 210, 223 (1976). These constitutional standards are incorporated in the Department's Patrol Guide § 212-11, which provides that an officer may stop a civilian to request identification and explanation of conduct; may then frisk the person only if he or she reasonably suspects there is danger of physical injury to the officer or others; and then may search the person if the frisk reveals an object that may be a weapon.

There is legal support for the proposition that the car search of Person A may be unconstitutional, as referred to by the CCRB prosecutor; "A police officer's entry into a citizen's automobile and his inspection of personal effects located within are significant encroachments upon that citizen's privacy interests." *People v. Torres*, 74 N.Y.2d 224, 229-230 (N.Y. 1989) (After a person was out of a car and patted down and nothing was found, the Court held that there was no longer a threat and to search the car was without legal authority).

However, the primary issue before this Court is not whether the car search was legal under search and seizure law, but whether Respondent ▇▇▇▇▇▇▇ action was shown to be misconduct warranting disciplinary action. The lack of cooperation of

Person A to immediately provide his documents to the officers upon request and his actions of moving around reaching within the car and still not providing the requested documents during the car stop, leads this Court to conclude that a search of the areas where Person A could reach in the vehicle was warranted. Courts have routinely held that where an officer's actions "were undertaken by the officer in good faith and in furtherance of his general law enforcement responsibilities, they are not subject to disciplinary punishment even if subsequently found to be beyond the bounds of accepted constitutional law." *Police Department v. Wang*, OATH Index No. 657/98. Cases have established that improper police action is punishable only if an officer acted "with knowledge that he was acting improperly, acted without concern for the propriety of his actions, or acted without due and reasonable that his actions were proper." *Police Department v. Dowd*, OATH Index No. 1189/90 (Oct. 5, 1990, *aff'd in part and rev'd in part on other grounds, Comm'r Decision (Nov. 20, 1990)*. To this end, we must assess whether Respondent was acting "in the reasonable exercise of his official powers." *Police Department v. Fiore*, OATH index No. 690/90 (Mar. 26, 1990). Here, the preponderance of the credible evidence shows that Respondent ███ acted in good faith by ordering the search of only the areas where he observed Person A reach as he sat in his car. He did not order a full blown search of the vehicle, such as the back seat and the trunk, and when nothing was found that could injure him or his fellow officers, no summonses were issued against Person A and he was allowed to get back in his car and leave the location. Thus a search of the immediate, reachable area in the front of the vehicle was reasonable.

With regard to Person A's hearsay evidence, while it is admissible in an administrative tribunal, it must be sufficiently probative and reliable to be accorded

probative weight. *Ayala v. Ward,* 170 A.D.2d 235 (1st Dep't 1991), *lv. to app. den.,* 78 N.Y. 2d 851 (1991). In this instance, Person A's account of how the traffic stop unfolded was corroborated by the testimony of both Respondent ▮▮▮ and Respondent ▮▮▮

Accordingly, Respondent ▮▮▮ is found Not Guilty.

### Frisk of Person A Without Sufficient Legal Authority

Also at issue is whether Respondent ▮▮▮ frisked Person A without sufficient legal authority. Respondent ▮▮▮ testified credibly that Person A was moving his hands all around in the car to the point that he had to order him out. He said his hands were near the seatbelt, to the right, and at other portions of the vehicle. Person A did all of this and did not provide his license, registration, and insurance as requested by Respondent ▮▮▮. Respondent ▮▮▮ stated that he was concerned for his safety and the other officers. It stands to reason that when he asked this uncooperative motorist to exit the vehicle, he would conduct a frisk of Person A for his safety and the safety of the other officers. Particularly, since it was night time and difficult to see.

Even if it were argued that Respondent ▮▮▮ could not "reasonably suspect" that there was a "danger of physical injury" to him or others without seeing a weapon, it is evident that Respondent ▮▮▮ was acting within the parameters of the good faith doctrine described above. There is no evidence to suggest that Respondent ▮▮▮'s act of frisking Person A was based on a "vindictive or retaliatory motive or [was] otherwise in bad faith." *Police Department v. Wang,* OATH index No. 657/98. In addition, Respondent ▮▮▮ testified that he ordered Respondent ▮▮▮ to conduct the frisk and Respondent ▮▮▮ was following orders. (Tr. 27). It is also worth noting that

**SERGEANT** ▮
**POLICE OFFICER** ▮

8

Person A displayed a Police Department courtesy card. This gives credence to the fact that he has a family member or close friend who works for the Department. It would be expected that Person A would comport himself in a manner that would be courteous if he wanted courteous treatment in return. Instead he sat with this hands folded, rolled down the window 25 percent, questioned the basis for the stop even though he knew the basis, and failed to provide documents upon request. Person A's own account and inaction warranted further police action and a more rigorous common law right of inquiry. Certainly the officers were not supposed to wait until Person A felt like turning over the requested documents for the vehicle.

Accordingly, Respondent ▮ is found Not Guilty.

Respectfully submitted,

*Claudia Daniels-DePeyster*
Claudia Daniels-DePeyster
Assistant Deputy Commissioner – Trials

**APPROVED**

JUN 17 2015
WILLIAM J. BRATTON
POLICE COMMISSIONER