# CCRB INVESTIGATIVE RECOMMENDATION

| Investigator: Wassim Abedrabbo | Team: Squad #9 | CCRB Case #: 201908495 | ☐ Force ☑ Abuse | ☑ Discourt. ☐ O.L. | ☐ U.S. ☑ Injury |
|---|---|---|---|---|---|
| Incident Date(s) Wednesday, 09/25/2019 12:15 PM | Location of Incident: 140 Alcott Place Building 19 on the 16th Floor | | Precinct: 45 | 18 Mo. SOL 3/25/2021 | EO SOL 11/9/2021 |
| Date/Time CV Reported Wed, 09/25/2019 1:23 PM | CV Reported At: CCRB | How CV Reported: Phone | Date/Time Received at CCRB Wed, 09/25/2019 1:23 PM | | |

| Complainant/Victim | Type | Home Address |
|---|---|---|
| ▇ | ▇ | ▇ |

| Subject Officer(s) | Shield | TaxID | Command |
|---|---|---|---|
| 1. POM Brian Hirschman | 22623 | 931734 | 045 PCT |
| 2. POF Stephanie Davis | 28218 | 930371 | 045 PCT |

| Witness Officer(s) | Shield No | Tax No | Cmd Name |
|---|---|---|---|
| 1. LT Carolyn Cruz | 00000 | 947524 | 045 PCT |
| 2. POF Jennifer Sugrim | 28015 | 939439 | 045 PCT |
| 3. POF Ivette Vargas | 05651 | 937673 | 045 PCT |
| 4. POM Chris Le | 17939 | 938829 | 045 PCT |

| Officer(s) | Allegation | Investigator Recommendation |
|---|---|---|
| A. POF Stephanie Davis | Abuse: Police Officer Stephanie Davis questioned § 87(2)(b) | ▇ |
| B. POM Brian Hirschman | Abuse: Police Officer Brian Hirschman questioned § 87(2)(b) | ▇ |
| C. POF Stephanie Davis | Abuse: Police Officer Stephanie Davis stopped § 87(2)(b) | ▇ |
| D. POM Brian Hirschman | Abuse: Police Officer Brian Hirschman stopped § 87(2)(b) | ▇ |
| E. POF Stephanie Davis | Abuse: Police Officer Stephanie Davis threatened to arrest § 87(2)(b) | ▇ |
| F. POF Stephanie Davis | Abuse: Police Officer Stephanie Davis interfered with § 87(2)(b) s use of a recording device. | ▇ |
| G. POF Stephanie Davis | Abuse: Police Officer Stephanie Davis frisked § 87(2)(b) | ▇ |
| H. POF Stephanie Davis | Abuse: Police Officer Stephanie Davis searched § 87(2)(b) | ▇ |
| I. POF Stephanie Davis | Discourtesy: Police Officer Stephanie Davis acted discourteously toward § 87(2)(b) | ▇ |

**Case Summary**

On September 25, 2019, § 87(2)(b) filed this complaint with the CCRB via telephone.

On September 25, 2019, at approximately 12:15 p.m., § 87(2)(b) was approached by Police Officer Stephanie Davis and Police Officer Brian Hirschman, of the 45th Precinct, on the 16th Floor of 140 Alcott Place in the Bronx, who asked him where he was coming from. Both officers informed § 87(2)(b) that they were responding to a domestic incident and asked him for ID so they may determine if he was involved (**Allegations A and B: Abuse of Authority – Question,** § 87(2)(g) (**Allegations C and D: Abuse of Authority – Stop,** § 87(2)(g) After § 87(2) refused to produce ID, PO Davis told him he would be placed in handcuffs if he did not provide the ID and then took his phone that he was using to record the interaction and placed him in handcuffs (**Allegation E: Abuse of Authority – Threat of Arrest,** § 87(2)(g) (**Allegation F: Abuse of Authority – Interference with recording device,** § 87(2)(g)

After placing § 87(2)(b) in handcuffs, PO Davis frisked over his waist area and pockets and then took his wallet out of his pocket (**Allegation G: Abuse of Authority – Frisk,** § 87(2)(g) (**Allegation H: Abuse of Authority – Search of person,** § 87(2)(g)

After determining that § 87(2)(b) was not involved in the incident being investigated, PO Davis kept § 87(2)(b) in handcuffs for over 10 minutes. Ultimately, § 87(2)(b) was released after Lieutenant Carolyn Cruz, also of the 45th Precinct, arrived on scene. As PO Davis was returning his wallet, she threw it onto the floor (**Allegation I: Discourtesy – Action,** § 87(2)(g)

No summonses were issued, and no arrests were made as a result of this incident. The investigation obtained PO Hirschman and PO Davis' BWC footage (**Board Review 01**).

**Findings and Recommendations**

**Allegation (A) Abuse of Authority: Police Officer Stephanie Davis questioned** § 87(2)(b)
**Allegation (B) Abuse of Authority: Police Officer Brian Hirschman questioned** § 87(2)(b)

**Allegation (C) Abuse of Authority: Police Officer Stephanie Davis stopped** § 87(2)(b)
**Allegation (D) Abuse of Authority: Police Officer Brian Hirschman stopped** § 87(2)(b)
**Allegation (E) Abuse of Authority: Police Officer Stephanie Davis threatened to arrest** § 87(2)(b)

**Allegation (G) Abuse of Authority: Police Officer Stephanie Davis frisked** § 87(2)(b)
**Allegation (H) Abuse of Authority: Police Officer Stephanie Davis searched** § 87(2)(b)

It is undisputed that PO Davis and PO Hirschman accidentally went to the 16th floor of 140 Alcott Place in the Bronx after receiving a radio call to respond to a domestic incident on the 16th floor of 140 Asch Loop in the Bronx. It is also undisputed that both officers asked § 87(2)(b) questions to determine whether he was associated with the call about an assault they were responding to. Finally, it is undisputed that after § 87(2)(b) refused to provide ID to the officers, PO Davis asked him if he wanted the officers to place him in handcuffs.

In her CCRB statement, PO Davis stated that she did not check to see or ask the 911 dispatcher if there was a description for the perpetrator before entering 140 Alcott Place (**Board Review 02**). They went to 140 Alcott Place instead of 140 Asch Loop because the officers were "rushing." She stopped § 87(2)(b) and asked him where he was walking from on the 16th floor because she did not know who she was looking for. When she first saw him, § 87(2)(b) looked "angry" because his face looked angry and he had a tense demeanor. When asked if she suspected § 87(2)(b) of criminality before stopping him, asking him where he was before the stop, and asking for his ID to determine "if he belonged there," she stated that she did not know.

PO Davis placed § 87(2)(b) in handcuffs because he turned around and literally asked to be handcuffed, and for the safety of all parties while the officers investigated the matter. After, PO

Davis frisked over §87(2)(b)'s waist and then took his wallet out of one of his pockets. She did not make any objective observations that led her to believe §87(2)(b) had a weapon concealed at any point.

PO Hirschman stated that at the time the officers placed §87(2)(b) in handcuffs, they did not have any reason to suspect that he was associated with the radio call that prompted them to go to the location (**Board Review 03**)

The investigation obtained EVENT information #§87(2)(b), which prompted PO Davis and PO Hirschman to respond to 140 Alcott Place, accidentally (**Board Review 11**). The 911 caller described the suspect as a Black male, who is 6'5" tall, heavy set, bald, and walked with a limp. §87(2)(b) is a black male and is §87(2)(b) (**Board Review 12**). §87(2)(b) has an §87(2)(b) (**Board Review 13**). PO Davis' and PO Hirschman's BWC video footage show that §87(2)(b) does not have a limp (**Board Review 06**) (**Board Review 14**).

*People v. De Bour*, 40 N.Y.2d 210 (**Board Review 04**). Before officers may approach a person and ask a pointed question indicative of criminality, there must exist a founded suspicion that criminal activity is present at that moment.

Officers may not seize an individual without some articulable justification. A seizure is the significant interruption of one's liberty of movement. If an officer has an individual stopped, they may frisk the person if they reasonably suspect that they are in danger by virtue of the detainee being armed. Innocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand.

If an apparent weapon is revealed during a frisk, a limited search may be conducted only of the area where the apparent weapon was discovered. Frisks or warrantless searches for contraband are not permitted. Finally, an officer may arrest an individual when they have probable cause to believe a person has committed a crime. *Id*.

Given that PO Davis did not provide or describe reason to objectively suspect §87(2)(b) was involved in criminal activity, PO Hirschman stated that they did not have reason to suspect him of being involved in the incident they went to investigate, and other information available to the investigation contradicted the possibility of §87(2)(b)'s involvement in the initial 911 call, the officers did not have founded suspicion to question §87(2)(b) regarding their investigation. In turn, the absence of any credible suspicion of §87(2)(b) renders the officers' forcible stop and PO Davis' frisk and search of him also unjustified. §87(2)(g).

**Allegation (F) Abuse of Authority: Police Officer Stephanie Davis interfered with §87(2)(b)s use of a recording device.**

§87(2)(b) stated that he began to record the interaction on his phone just before he was placed in handcuffs (**Board Review 12**). As §87(2)(b) was being placed in handcuffs, PO2 took his phone from his hands. At that time, the phone was recording the interaction; however, when §87(2)(b) was given his phone back, he saw that the recording was stopped after the phone was taken from his hand.

§87(2)(b) provided a cell phone video recording that partially captures the incident in question (**Board Review 15**). At the end of the 17 second recording, §87(2)(b)'s phone is taken from his hand and the recording immediately ends.

PO Davis' BWC depicts that portion of the interaction between 56 seconds and 1:13 and confirms that PO Davis takes §87(2)(b)'s phone just before the recording ends (**Board Review 06**).

During her CCRB statement, PO Davis confirmed that she took §87(2)(b)'s phone from his hand before officers placed him in handcuffs. She had reason to believe he was recording but did not check to see if it was recording when she took it. When asked, PO Davis stated that she did not "intentionally" stop a video recording on §87(2)(b)s phone.

**CCRB Case # 201908495**

Given that the recording on [§ 87(2)(b)]s phone ended immediately after the phone came into possession of PO Davis, the investigation is crediting that she ended the recording.

**Patrol Guide Procedure 203-29** (**Board Review 05**). Members of the public have the right to record police activity. That right can be limited when a violation of the law is committed by the person recording or for the safety of officers. However, officers may not intentionally block or obstruct the recording when there is not legitimate law enforcement reason to do so.

PO Davis' action of taking [§ 87(2)(b)]s phone so she may place him in handcuffs was proper; however, the action of ending the recording did not serve and was not supported by a legitimate law enforcement reason. [§ 87(2)(g)]

**Allegation (I) Discourtesy: Police Officer Stephanie Davis acted discourteously toward** [§ 87(2)(b)]

During his CCRB statement, [§ 87(2)(b)] stated that after he was placed in handcuffs, he was held until Lieutenant Cruz arrived. After she arrived and spoke with PO Davis and PO Hirschman, he was released. When he went to retrieve his wallet that was in PO Davis' possession, she "threw" it onto the floor (**Board Review 12**).

PO Hirschman's BWC footage depicts the interaction where PO Davis put [§ 87(2)(b)]s wallet on the ground between 26:08 and 26:12 (**Board Review 06**). PO Davis held out the wallet at 26:08 and placed it on the ground at 26:12.

During her CCRB statement, PO Davis stated that she put the wallet on the ground because she held it out for a long time and [§ 87(2)(b)] would not take it from her hand.

**Patrol Guide Procedure 203-10** (**Board Review 07**) Officers are prohibited from engaging in conduct prejudicial to good order, efficiency or discipline of the department.

PO Davis' action of putting [§ 87(2)(b)]s wallet on the ground after offering it to him for four seconds did not serve a credible task related purpose; in fact, it lengthened the process of getting [§ 87(2)(b)]s property back in his possession. [§ 87(2)(g)]

### Civilian and Officer CCRB Histories

- [§ 87(2)(b)]

- PO Davis has been a member of service for 18 years and has been a subject in five other CCRB complaints and seven allegations, none of which were substantiated (see officer history). [§ 87(2)(g)]

- PO Hirschman has been a member of service for 17 years and has been a subject in eight other CCRB complaints and 11 allegations, none of which were substantiated (see officer history). [§ 87(2)(g)]

### Mediation, Civil and Criminal Histories

- [§ 87(2)(b)] declined to mediate this complaint.
- As of April 27, 2020, the New York City Office of the Comptroller had no record of a notice of Claim being filed in regards to this complaint (**Board Review 09**).

- § 87(2)(b) ████████████████████████████
  ████████████████████████

Squad No.:     __09__

Investigator:  __Wassim Abedrabbo__    __SI Wassim Abedrabbo__    __January 20, 2021__
                        Signature                     Print Title & Name                  Date

Squad Leader: __Monique West__    __IM Monique West__    __1/20/2021__
                        Signature                     Print Title & Name                  Date

Reviewer:      _____    _____    _____
                        Signature                     Print Title & Name                  Date

**CCRB Case # 201908495**
*CCRB CTS – Confidential*                                                    Page 4