UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

SHAWN STEWART

                                      Plaintiff,

             -against-

POLICE OFFICER STEPHANIE DAVIS, SHIELD # 28218,
POLICE OFFICER BRIAN HIRSCHMAN, SHIELD # 22623

                            Defendants/Third Party-Plaintiffs,

THE CITY OF NEW YORK,

                Third-Party Defendants

------------------------------------------------------------------- x

Docket No.: 22-CV-3583
(JER)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NEW YORK CITY POLICE OFFICER STEPHANIE DAVIS AND BRIAN HIRSCHMAN'S MOTION FOR INDEMNIFICATION PURSUANT TO GENERAL MUNICIPAL LAW § 50-K AS A MATTER OF LAW

*Doug LaBarbera, Esq*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

THE DISCIPLINARY INVESTIGATION AND PROCEEDINGS ................................. 2

STANDARD OF REVIEW ........................................................................................................ 3

ARGUMENT ............................................................................................................................... 5

   POINT I.

   THE CITY'S ADMISSION THAT THE OFFICERS WERE ACTING
   IN GOOD FAITH RENDERS ITS DECISION NOT TO INDEMNIFY
   ARBITRARY AND CAPRICIOUS. .............................................................................. 5

   POINT II.

   THE CITY'S DECISION TO RELY UPON THE RESOLUTION
   OF THE DISCIPLINARY PROCEEDING TO REFUSE TO INDEMNIFY
   IS ARBITRARY AND CAPRICIOUS. ........................................................................ 7

CONCLUSION ........................................................................................................................... 8

**PRELIMINARY STATEMENT**

Plaintiff Shawn Stewart ("Plaintiff") brought this action, pursuant to 42 U.S.C. § 1983, against Defendant New York City Police Officers Stephanie Davis and Brian Hirschman ("officer Davis and Hirschman" or "the officers"), alleging violations of his right to be free from an unlawful search and seizure and excessive force. (Declaration of Douglas LaBarbera "LaBarbera Decl." Exhibit A)  Officers Davis and Hirschman filed an answer to Plaintiff's Complaint that included third-party claims against The City of New York  ("The City") for prospective indemnification pursuant to New York's General Municipal Law §50-k. ("G.M.L. 50-k") (LaBarbera Decl. Ex. B)  The City filed an Answer to the officers' third-party claims on January 3rd, 2023.  (LaBarbera Decl. Ex. C)  Trial of Plaintiff's two claims commenced on April 8th, 2024, and concluded on April 11th, 2024.  (LaBarbera Decl. Ex. D)  The jury returned a verdict finding the officers not liable for excessive force claim, but liable for unlawfully searching and seizing Plaintiff, awarding $25,000 in compensatory damages.  (LaBarbera Decl. Ex. E)

After trial, Officers Davis and Hirschman filed a motion, pursuant to Rule 50 of the Federal Rules of Civil Procedure, asking the Court to grant them Qualified Immunity on Plaintiff's unlawful search and seizure claim.  (LaBarbera Decl. Ex. F) By Memorandum Order dated June 21st, 2024, the Court denied the motion. (LaBarbera Decl. Ex. G)  By letter dated July 12th, 2024, Officers Davis and Hirschman formally requested, pursuant to G.M.L. 50-k, that The City provide indemnification for the jury's award of compensatory damages and any attorney's fees that might be awarded.  (LaBarbera Decl. Ex. H)  By letters dated January 24th, 2025, The City denied the officers' request for indemnification.  (LaBarbera Decl. Ex. I)

Officers Davis and Hirschman now move this Court for an Order, pursuant to G.M.L. 50-k, compelling The City to provide indemnification for the jury's $25,000 award of compensatory damages, and any attorney's fees that may be awarded in the future.

## STATEMENT OF FACTS

Although the Court is undoubtedly aware of the facts of this case, Officers Davis and Hirschman respectfully refer the Court to, and reiterate here, the Summary of the Evidence contained in their Rule 50 motion.  (LaBarbera Decl. Ex. F at pg. 1-10)

## THE DISCIPLINARY INVESTIGATION AND PROCEEDINGS

The incident resulted in an investigation by the New York City Civilian Complaint Review Board. ("CCRB")  The CCRB substantiated allegations that Officers Davis and Hirschman unlawfully stopped, questioned, frisked and searched Plaintiff.  As a result of the substantiated investigation, Officer Davis was served with NYPD Charges and Specifications which alleged that she questioned, stopped, frisked, and searched Plaintiff without sufficient legal authority.[1]  As a result of the substantiated investigation, the CCRB recommended to the NYPD that Officer Hirschman receive a Schedule B command discipline.[2]  The Police Commissioner reviewed the CCRB's request and issued a departure letter dated November 8th, 2021, which decided that Officer Hirschman should be issued a Schedule A command discipline instead.[3]  Officer Hirschman forfeited three ("3") vacation days as a penalty.  On March 4th,

---

[1] "On April 2nd, 2012, the NYPD and CCRB signed a Memorandum of Understanding which conferred on the CCRB the power to prosecute substantiated cases where the board recommended Charges and Specifications."  (see, https://www.nyc.gov/site/ccrb/prosecution/apu-memorandum-of-understanding.page)  Notwithstanding, the Police Commissioner retains final authority and discretion to make final disciplinary determinations,  (see, ¶ 8)

[2] According to the CCRB, "[C]ommand Disciplines are recommended for misconduct that is more problematic than poor training but are not as severe a discipline as Charges and Specifications." (see, https://www.nyc.gov/site/ccrb/complaints/complaint-process/police-discipline.page)

[3] As per paragraph 6 of the Memorandum of Understanding the Police Commissioner may impose discipline of a lower level than is recommended by the CCRB upon notice in writing to the CCRB with a detailed explanation of the reasons for deviating from the recommendation.

2022, Officer Davis entered into a negotiated settlement with the CCRB wherein she pleaded guilty to the findings and agreed to forfeit eighteen ("18") vacation days as a penalty.

## **STANDARD OF REVIEW**

Pursuant to General Municipal Law § 50-k(3),

> the city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees… or in the amount of any settlement of a claim approved by the corporation counsel and the comptroller, provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

In other words, so long as a New York City Police Officer was acting within the scope of their employment at the time of an incident and did not violate any NYPD rule or regulation regarding the alleged deprivation, the City is statutorily mandated to indemnify that officer in the event of a judgment or settlement. In Harris v. Rivera, 921 F. Supp. 1058, 1060 (S.D.N.Y. 1995), Judge Scheindlin explored the contours of a claim for indemnification made by a New York City Police Officer against Defendant City. "The Corporation Counsel of the City of New York makes the initial determination as to whether the employee's conduct was covered by GML § 50-k." Id. "Pursuant to GML §§ 50-k(2) and 50-k(5), the Corporation Counsel may decide not to represent an employee if he finds that the employee violated any rules or regulations of the employing agency, or that disciplinary complaints are pending against the employee arising out of the incident that forms the basis of the lawsuit." Id. "If the City declines to represent an employee, the employee may bring an action for indemnification pursuant to GML § 50-k(3)." Id. at 1061. "The determination of the Corporation Counsel not to represent an employee "may

3

be set aside only if it lacks a factual basis, and, in that sense, is arbitrary and capricious." Id. ⁴

"[T]here is no controlling authority which provides that an Article 78 proceeding is the exclusive means to challenge the Corporation Counsel's denial of representation." Nevares v. Morrissey, 95 Civ. 1135 (JGK), 1998 U.S. Dist. LEXIS 7680, at *10-11 (S.D.N.Y. May 19, 1998) "A city employee may pursue a claim for indemnification by bringing an action in any court that has jurisdiction to hear the claim." Harris v. Rivera, 921 F. Supp at 1061.

"Claims for indemnification do not generally ripen until a judgment in the underlying action is paid." Harris, 921 F. Supp. at 1062. "However, courts have created a broad exception to this rule: where indemnification is asserted in a third-party action . . . for the sake of fairness and judicial economy, the CPLR allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action." Id. *citing* Mars Assoc. v. New York City Educ. Const. Fund., 513 N.Y.S.2d 125 (1st Dep't 1987). In Harris, Judge Scheindlin held that a law enforcement officer's claims for indemnification pursuant to General Municipal Law 50-k(3) "fall comfortably within this exception." (*see also*, Woo v. City of New York, 1996 U.S. Dist. LEXIS 11689, *43 *rejecting,* "the City's argument that [an NYPD Officer's] indemnification cross-claim is premature")(*see also*, Wong v. Yoo, 649 F. Supp. 2d 34, 77 (E.D.N.Y. 2009), "[The court] need not dismiss the third-party § 50-k(3) indemnification claims on summary judgment because they are technically premature; (*see also,* Hanson v. New York City, No. 15-CV-1447 (MKB), 2018 U.S. Dist. LEXIS 51581, at *72 (E.D.N.Y. Mar. 27, 2018) ("the Court sees no reason to adjudicate the indemnification issues prior to any liability determination.").

---

⁴ The same standard applies to a claim for indemnification. (*see generally*, G.M.L. 50-k-3)

4

# ARGUMENT
## POINT I

### THE CITY'S ADMISSION THAT THE OFFICERS WERE ACTING IN GOOD FAITH RENDERS ITS DECISION NOT TO INDEMNIFY ARBITRARY AND CAPRICIOUS.

The City's decision not to indemnify is based, in part, on its contention that the "trial record further supports," the findings of the CCRB that the officers violated department rules. However, there can be no dispute that Officers Davis and Hirschman acted in good faith at all times during the incident. During the trial, Your Honor remarked that Plaintiff acted in a highly provocative way during the interaction. (LaBarbera Decl. Ex. D at pg. 294) Furthermore, in the Court's Memorandum Order denying Qualified Immunity, the Court noted that it was "not without considerable sympathy for Officers Davis and Hirschman given Stewart's arguably evasive response to their inquiries."(LaBarbera Decl. Ex. G at pg. 1) During the trial, the officers testified repeatedly that their sole motivation was to find and assist the individual who called for help quickly. Institutional hurdles within the NYPD hampered their efforts to do so. The tablet in their car was not functioning correctly. They reasonably believed that NYPD policy dictated that they wait for a supervisor to respond before releasing Plaintiff. They were unable to raise a supervisor for assistance immediately. When Lt. Cruz responded, she did so long after she was first requested. None of the officers, Lt. Cruz included, realized they were in the wrong building until after the incident was over.

Even the NYPD, a subdivision of The City, acknowledged that Officers Davis and Hirschman acted in good faith. As mentioned above, the CCRB asked the Police Commissioner, who has final authority over discipline, to impose a "Schedule B Command Discipline," which carries a presumptive penalty of the forfeiture of up to 10 vacation days. The Police Commissioner reviewed the case and determined that a "Schedule B Command Discipline," was

5

too severe of a penalty and instead imposed a Schedule A command discipline which carries a lesser presumptive penalty of up to 5 vacation days. In its departure letter, the NYPD explained that it based this imposition of a lesser penalty on the fact that the Police Commissioner believed "that the stop and the question were conducted in good faith." (LaBarbera Decl. Ex. J)

New York City Administrative Courts have determined that New York City Police Officers do not violate NYPD rules when their actions are undertaken in good faith. In <u>NYPD v. Wang</u>, OATH Index No. 657/1998 an Administrative Law Judge held that "so long as the officer undertook the actions in good faith and in furtherance of his general law enforcement responsibilities, they are not subject to disciplinary punishment even if subsequently found to be beyond the bounds of accepted constitutional law." Furthermore, in a 2000 decision, Rosemarie Maldonado, who was recently the NYPD Deputy Commissioner for Trials, cited <u>Wang</u>, when she held that even if an NYPD officer did not have the right to stop and frisk a civilian, he would not have committed misconduct unless he acted in bad faith. <u>NYPD v. Tirado</u>, OATH Index No. 1977/2000. (*see also*, LaBarbera Decl. Ex. L at pg. 6 *citing* <u>Wang</u>)

There is no reasonable interpretation of the record that suggests Officers Davis and Hirschman acted in bad faith. Your Honor acknowledged this when the Court denied Plaintiff's request that the jury be allowed to consider punitive damages. Given the NYPD concession that the officers were acting in good faith, and the cases cited above, The City's contention that the trial record supports a finding that the Officers violated NYPD rules is without basis.

## POINT II

## THE CITY'S DECISION TO RELY UPON THE RESOLUTION OF THE DISCIPLINARY PROCEEDING TO REFUSE TO INDEMNIFY IS ARBITRARY AND CAPRICIOUS.

The City's decision to refuse to indemnify the officers because of the manner in which they resolved their disciplinary cases is arbitrary and capricious and should be set aside.

When the officers resolved their respective disciplinary proceedings in November 2021 and March 2022, this civil case had not been filed. (LaBarbera Decl. Ex. J and K) Had the officers understood that pleading guilty or accepting command discipline would result in The City refusing to represent and indemnify them in the event a civil case was filed, they would have chosen to fight the case at the NYPD trial room.

Officer Davis detailed how her family situation, combined with the institutional problems within the NYPD disciplinary system, exerted tremendous pressure on her to plead guilty so she could retire rather than endure a lengthy wait for a trial. (LaBarbera Decl. Ex. K) It is wholly inequitable for the City to use the result of a flawed system to turn its back on the very employees it asks to enforce its laws. The reality of the NYPD disciplinary system is that an NYPD officer who desires to resolve their disciplinary case within a reasonable period of time is left with no choice but to plead guilty. This case represents a prime example of this dysfunction. This incident was reported to the CCRB the same day it occurred, September 25th, 2019. (LaBarbera Decl. Ex. M) By the time the CCRB, another agency of The City, formally charged Officer Davis on October 12th, 2021, more than two years had elapsed since the complaint was made. By the time Officer Davis was presented with the possibility of a negotiated settlement in early 2022, she had already waited approximately two and a half years for a resolution of this disciplinary case. Frankly, Officer Davis was not in a position to endure the consequences that would have resulted if she was forced to wait another two years to be given her due process right

7

to protest her innocence at a department trial, particularly since she did not fully appreciate the collateral consequences of accepting the plea. The City's apparent callous disregard for the realities faced by Officers caught up in its flawed disciplinary system, and its determination to use the result of such a system as a cudgel to shift the financial burden to the very Officers it relies upon to enforce its laws should not be permitted.

## CONCLUSION

For the reasons set forth above, Defendant New York City Police Officers Stephanie Davis and Brian Hirschman, respectfully request an Order, pursuant to General Municipal Law § 50-k, granting them judgement as a matter of law requiring Third-Party Defendant The City of New York to indemnify them from the jury's award of compensatory damages, and any attorney's fees that might be awarded pursuant to 42 U.S.C. § 1988, together with such other and further relief as the Court deems just an proper.

We thank the Court for its time and attention to this matter.

Dated:   New York, NY
         March 10th, 2025

Respectfully Submitted

_____/s/_____

BY: Douglas LaBarbera (DL 6212)
LABARBERA & ASSOCIATES
*Attorneys for Defendants Davis & Hirschman*
111 John Street, Suite 640
New York, NY 10038
(212) 964-8038

CC: **VIA ECF**

Andrew Brian Stoll
Stoll, Glickman & Bellina, LLP
*Attorneys for Plaintiff*
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201

Hannah Faddis
New York City Law Department
Special Federal Litigation Division
100 Church Street
Ste 3-216
New York, NY 10007