UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN STEWART,<br><br>              Plaintiff,<br><br>      -v-<br><br>STEPHANIE DAVIS and BRIAN HIRSCHMAN,<br><br>              Defendants/Third-Party<br>              Plaintiffs,<br><br>      -v-<br><br>THE CITY OF NEW YORK.<br><br>              Third-Party Defendant. | 22-cv-3583 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

A jury unanimously found defendants, former police officers
Stephanie Davis and Brian Hirschman, liable under 42 U.S.C. § 1983
for unlawfully detaining plaintiff Shawn Stewart without
reasonable suspicion, and awarded Mr. Stewart $25,000 in damages.
After trial, this Court denied defendants' motion for qualified
immunity and the City of New York declined to indemnify them.
Defendants now seek a judgment as a matter of law that they are
entitled to indemnification. The Court remains sympathetic to
these defendants because, in the Court's view, their modest
infractions were to some degree provoked by Mr. Stewart's
intransience. However, for the reasons stated below, the Court is
nevertheless obliged to deny their motion.

I.    Background

Both the Court and the parties are well familiar with the facts in this case, which are outlined in detail in the Court's earlier order denying qualified immunity, ECF No. 75, and which were chiefly evidenced by the recordings on the officers' body cameras. The Court briefly recounts those facts below.

On September 25, 2019, defendants, two officers of the New York City Police Department ("NYPD"), were on patrol in the Bronx neighborhood of Co-op City. At approximately 11:40 am, they received a radio call from dispatch asking nearby officers to respond to a domestic assault that had allegedly occurred in Apartment 16-G of a building located at 140 Asch Loop. Responding to the call, defendants inadvertently drove to 140 Alcott Street, a different building in the same neighborhood. Arriving at 140 Alcott Street, the only thing that defendants knew about the suspect of the alleged domestic assault was that he was male. Under normal circumstances, defendants would have been able to access a description of the suspect from a tablet in their patrol vehicle, but the tablet was not working.

Around noon, defendants entered 140 Alcott and took an elevator up to the sixteenth floor. When the elevator doors opened, defendants saw Mr. Stewart, who is male, standing by the elevator call button. Defendants immediately asked Mr. Stewart where he was coming from, to which Mr. Stewart responded, "an apartment," but

did not specify the number. Defendants then proceeded to ask Mr. Stewart various other questions about who he was and where he was coming from, which Mr. Stewart adamantly refused to answer. Thereupon, defendants reassured Mr. Stewart that they were just trying to ensure that he was not involved in the reported incidence of domestic violence (which, as later ascertained, he was not), but he still did not offer his name or address. Officer Davis then asked Mr. Stewart, "Do you want us to handcuff you?" to which Mr. Stewart responded, "Sure, go ahead," before turning around and placing his hands behind his back. Officer Davis then stated, "Fine, cuff him up," and Officer Hirschman proceeded to do so. After Officer Hirschman handcuffed Mr. Stewart, defendants continued to ask him simple, basic questions, which he once again refused to answer.[1]

A few minutes later, Officer Davis answered a call from a police lieutenant, who was one of her superiors. Officer Davis told the lieutenant:

> This guy was giving us a hard time so we had to forcibly . . . stop him. He refused to tell us where he was coming from and he's just challenging us and everything. He doesn't seem to be part of the dispute now that we have more information. But he is just on a rampage now. . . . We kept asking his name and where he was coming from but he did not want to give it to us. He was trying to flee in the elevator . . . .

---

[1] Although Mr. Stewart had a legal right to silence, it is clear that he never believed the answers would incriminate him in any way whatsoever; he simply intended to give the police a hard time.

Although Officer Davis told the lieutenant that she did not believe that Mr. Stewart was a suspect in the dispute, defendants did not release him. When the lieutenant later arrived at the scene, the lieutenant, with whom Mr. Stewart was more cooperative, confirmed Mr. Stewart's name and that Mr. Stewart worked, but did not live, in the building. The lieutenant then directed defendants to uncuff Mr. Stewart and release him.

In the months that followed, the New York City Civilian Complaint Board ("CCRB") investigated this incident. Following that investigation, the CCRB found that defendants had violated various departmental rules. Specifically, the CCRB determined that Officer Davis had abused her authority by questioning, stopping, and threatening to arrest Mr. Stewart, by interfering with Mr. Stewart's use of a recording device, and by frisking and searching him. See ECF No. 79, Exhibit M, at 1. The CCRB further determined that Officer Hirschman had abused his authority by stopping and questioning Mr. Stewart. See id. Having made these investigative findings, the CCRB served Officer Davis with NYPD Charges and Specifications alleging that she questioned, stopped, frisked, and searched Mr. Stewart without sufficient legal authority. See ECF No. 79, Exhibit K, at ¶ 3. Officer Davis pleaded guilty to those charges pursuant to a negotiated settlement. See id. at ¶¶ 8, 22.

The CCRB also recommended that the NYPD impose on Officer Hirschman a Schedule B command discipline. See ECF No. 79, Exhibit

J, at 1. Although the NYPD ultimately determined that Officer Hirschman had acted in "good faith" and that a Schedule B command discipline was not appropriate, it nevertheless agreed that "both the stop and the question were improper" and imposed a Schedule A command discipline. Id. Like Officer Davis, Officer Hirschman also pleaded guilty to the CCRB's disciplinary findings. See ECF No. 79, Exhibit I, at 1.

On May 3, 2022, Mr. Stewart sued defendants under 42 U.S.C. § 1983 for unlawful detention and excessive force. Defendants proceeded to file a third-party complaint against the City, seeking indemnification if they were found liable. The Court bifurcated the third-party indemnification claim, ruling that it would decide the indemnification issue as a matter of law if the jury found defendants liable for either of Mr. Stewart's claims. After several months of discovery, and a mediation that ultimately failed, the case went to trial. The jury unanimously found defendants not liable for excessive force, but liable for unlawful detention, and awarded $25,000 in damages. Defendants then moved for judgment as a matter of law under Federal Rule of Civil Procedure 50, arguing that they were entitled to qualified immunity. The Court denied that motion, holding that no reasonable police officer could have believed that there was reasonable suspicion to detain Mr. Stewart.

On July 12, 2024, defendants submitted a letter to the City's Corporation Counsel, requesting indemnification from the City

pursuant to General Municipal Law § 50-k. In letters separately
addressed to each defendant, Corporation Counsel denied their
request based on the fact that both officers pleaded guilty to
CCRB's disciplinary findings, as well as on its determination that
those findings were supported by the evidence presented at trial.
See ECF No. 79, Exhibit I.

Defendants have now moved before this Court for a judgment as
a matter of law that they are entitled to indemnification by the
City. For the reasons stated below, the Court must deny their
motion.

II.  Standard

Under section 50-k, the City must indemnify an employee for
conduct that complies with the rules and regulations of the
employee's agency, so long as any injury was not the result of the
employee's intentional wrongdoing or recklessness. See N.Y. Gen.
Mun. Law § 50-k(3).[2] "The question [of] whether an act was done in

---

[2] Section 50-k(3) provides in full:

> The city shall indemnify and save harmless its employees in
> the amount of any judgment obtained against such employees in
> any state or federal court, or in the amount of any settlement
> of a claim approved by the corporation counsel and the
> comptroller, provided that the act or omission from which
> such judgment or settlement arose occurred while the employee
> was acting within the scope of his public employment and in
> the discharge of his duties and was not in violation of any
> rule or regulation of his agency at the time the alleged
> damages were sustained; the duty to indemnify and save
> harmless prescribed by this subdivision shall not arise where

violation of any agency rule, or was within the employee's scope of employment, is a factual determination made in the first instance by Corporation Counsel, whose determinations may be set aside only if they are not supported by the evidence or are in some other sense arbitrary and capricious."[3] Ekukpe v. Santiago, 823 Fed. App'x 25, 33 (2d Cir. 2020) (unpublished) (quoting Mercurio v. City of New York, 758 F.2d 862, 865 n.1 (2d Cir. 1985) (citing Williams v. City of New York, 64 N.Y.2d 800, 802 (N.Y. 1985))). In determining whether Corporation Counsel's decision lacks evidentiary support or was arbitrary and capricious, the Court must "consider the record available to the Corporation Counsel at the time of decision and determine whether the Corporation Counsel's determination is rational and substantiated by facts contained in that record." Banks v. Yokemick, 214 F. Supp. 2d 401, 411 (S.D.N.Y. 2002).

III. Discussion

After careful consideration, the Court concludes that Corporation Counsel's decision to deny indemnification to defendants was not arbitrary and capricious. The decision was based on both defendants' disciplinary records before the CCRB and the

---

the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

[3] Unless otherwise indicated, all case quotations omit internal alterations, brackets, citations, ellipses, quotations, and quotation marks.

NYPD, as well as the trial record before this Court. As discussed above, the CCRB substantiated findings that both defendants abused their authority during the incident, after which both defendants pleaded guilty. Moreover, a jury unanimously voted that defendants unlawfully detained Mr. Stewart without reasonable suspicion, a verdict that required them to conclude that defendants acted with "intent[] to detain him." ECF No. 79, Exhibit D, at 370:4. The record evidence therefore supports a finding that Mr. Stewart's constitutional injury was the result of "intentional wrongdoing." N.Y. Gen. Mun. Law § 50-k(3). Under these circumstances, Corporation Counsel's decision not to indemnify defendants was not arbitrary and capricious.

Defendants insist that Corporation Counsel's decision was arbitrary and capricious for two reasons, neither of which is ultimately persuasive. As to Corporation Counsel's decision with respect to Officer Davis, defendants argue that Officer Davis decided to plead guilty under difficult personal circumstances and that she was not aware that the City would not indemnify her at the time. See ECF No. 79, Exhibit K, at ¶¶ 7-21. The Court is sensitive to the personal circumstances that contributed to Officer Davis's decision to plead guilty. However, defendants do not explain how, in light of the record before Corporation Counsel after trial, those circumstances rendered Corporation Counsel's indemnification denial arbitrary and capricious.

As to Corporation Counsel's decision with respect to Officer Hirschman, defendants point to the NYPD's acknowledgment, in its letter imposing a Schedule A discipline, that Officer Hirschman had acted in "good faith." See ECF No. 79, at Exhibit J, at 1. However, as the case law makes clear, for purposes of section 50-k, what matters is the determination of Corporation Counsel, not any determinations of an employee's agency. See Ekukpe, 823 Fed. App'x at 33. Here, although the NYPD found that Officer Hirschman acted in "good faith," Corporation Counsel nevertheless determined that the record demonstrated that Officer Hirschman had violated applicable rules. Accordingly, the Court must conclude that Corporation Counsel's decision denying indemnification was not arbitrary and capricious.

IV.   Conclusion

For the foregoing reasons, applying the arbitrary and capricious standard to Corporation Counsel's decision in this case, the Court is obliged to deny defendants' motion for judgment as a matter of law. As the jury found, the defendants did not perfectly adhere to the law, and their decision to detain Mr. Stewart without sufficient cause was unlawful. Overall, however, in the Court's view, the defendants, who were under the belief that domestic violence might still be ongoing in an apartment near the location where Mr. Stewart was stopped, exercised considerable restraint under difficult circumstances. In the broader picture,

therefore, while the defendants' less-than-perfect confrontation with the difficult Mr. Stewart involved a brief intentional detention that Mr. Stewart almost invited, overall the "injury" to Mr. Stewart was very modest and the "intentional wrongdoing" of the defendants very minimal. See N.Y. Gen. Mun. Law § 50-k(3). Under these "de minimis" circumstances, the Court remains hopeful that Corporation Counsel will exercise its discretion to reconsider its decision denying indemnification. In the meantime, since there is nothing further that can be done in this Court, the Clerk of Court is directed to close the case.

SO ORDERED.

New York, NY
May **9**, 2025

JED S. RAKOFF, U.S.D.J