UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

SHAWN STEWART

                                                      Plaintiff,

               -against-


POLICE OFFICER STEPHANIE DAVIS, SHIELD # 28218, POLICE OFFICER BRIAN HIRSCHMAN, SHIELD # 22623

                                                      Defendants.

------------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES PURSUANT TO RULE 54, 42 U.S.C. § 1988**

TABLE OF AUTHORITIES

CASES

*Bailey v. Pataki*, 08-CV-8563 (JSR), 2016 WL 3545941 (S.D.N.Y. June 16, 2016) ...................... 4
*Cruz v. Zucker*, 14-CV-4456 (JSR), 2017 WL 1093285        (S.D.N.Y. Mar. 10, 2017) ............ 1
*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................................... 3
*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748      (2d Cir. 1998) .................................................. 5


OTHER

https://www.bls.gov/data/inflation_calculator.htm ........................................................................ 5

ANDREW B. STOLL declares, pursuant to 28 USC § 1746:

1.      Plaintiff Shawn Stewart ("Mr. Stewart") submits this memorandum in support of his application pursuant to 42 USC § 1988 and FRCP 54(d), for an order awarding Plaintiff attorneys' fees and costs as the prevailing party in this litigation.

2.      This Court has written more than once on fee applications. In *Cruz v. Zucker*, 14-CV-4456 (JSR), 2017 WL 1093285, at *2 (S.D.N.Y. Mar. 10, 2017), the Court summed up the law as follows:

> In any action or proceeding to enforce a provision of section 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. Attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights. The "presumptively reasonable fee award" is calculated by determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together. (*Cleaned up*).

3.      This Court went on to describe the calculation of a reasonable hourly rate, noting the Second Circuit's mandate that a district court "should consider, among others, the Johnson factors" which are "the time and labor required (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.*

4.      The time and labor required of this case are detailed in *Exhibit 1* to my Declaration in Support of Plaintiff's Fee Application. But they don't tell the entire story; as described in my Declaration, my extensive criminal law experience allowed me to litigate this case with

extraordinary efficiency, forgoing depositions that other counsel would have been loathe to forgo and prepping for trial more quickly than most. Further relevant here is that I had no need even to observe Officer Hirschman's demeanor to prep for trial; I had already cross examined him previously.

5. The level of skill required to perform these legal services properly was high. Particularly as it related to the danger of a qualified immunity judgment, the case required a closely threaded narrative and firm and skillful cross examination, a deep familiarity with NYPD procedure, and strong persuasive trial skills, to achieve a result for my client. Perhaps most reflective of that skill is the Court's own reaction to the evidence, which appears less sympathetic than the jury's result. While the Court's take on the matter is, respectfully, not one that I share, I do think it's reflective of the skill that was necessary here to achieve the result- presenting a legally unassailable case notwithstanding the Court's skepticism, while persuading the jury of the real emotional impact.

6. In terms of preclusion of other employment, our firm is a small firm precluded from taking every case that we'd like to take. Thus, taking this case – in particular, bringing it to trial, obviously impaired our ability to take on other matters. This factor should weigh in our favor.

7. I don't have a "customary hourly rate", as I rarely work on an hourly basis. Most of my cases involve billing by task, or lump sum pre-indictment, pre-trial and trial fees, or contingency agreements. This sometimes results in a net hourly fee greater than $675.00, but sometimes less, given the challenging civil rights cases we embrace at my firm. My retainer agreement provides that if the client wishes to accept a settlement while waiving his right to recover attorneys' fees, my firm has the right to recover its lodestar in fees from the client in lieu of its one third contingency. In such a case, the retainer with Mr. Stewart says that my firm's

"market rate is currently billed at the rate or $450.00/hour for partners' time", a discounted rate for our civil rights clients.

8. This leads to a major factor in this case- whether the fee is fixed or contingent. This is consistent with the Second Circuit's observation that a Court can focus "on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Here, the risk of a defense verdict was substantial and, perhaps equally important was the risk of a struggle in enforcing any eventual judgment, given the substantial possibility the City would not indemnify the officers and my knowledge that the state statute of limitations was blown before I took the case, increased the risk further. Our willingness to take on this case- one we thought was important, but not likely very profitable, should be rewarded.

9. There were no relevant time limitations imposed by the client or the circumstances.

10. The amount involved in the case and the results obtained weighs strongly in favor of our fee request here. As described in my Declaration, the results were excellent- approximately a thousand dollars per minute Mr. Stewart was detained, with garden variety emotional damages, in a situation the Court has described less than favorably to Mr. Stewart.

11. My experience, reputation and ability are described in my Declaration in Support of Plaintiff's Fee Application, and supported by *Exhibit 3* to that Declaration, the Declaration of Scott A. Korenbaum, attesting to my reputation. As far as experience and ability, my years of litigating both state criminal and civil rights cases made me the ideal attorney for a case like this one. Again, my experience with Officer Hirschman is relevant here- there is a degree of coincidence that in the gigantic, busy New York City court system, I had previously come across

him. But it is also reflective of the depth to which I'm immersed in this criminal/civil mix, day in and out, and prepared to handle virtually anything that happens within it.

12. The "undesirability" of the case is supported by the relatively low damages and the blown statute of limitations; again, my firm should be rewarded for taking on this relatively low damage, unpopular case and vindicating Mr. Stewart's rights.

13. The nature and length of the professional relationship in this case weighs in favor of a higher rate- there was not a preexisting relationship or hope for return business that would suggest a reduced rate.

14. Finally, the question of rewards in similar cases is frequently the heart of the inquiry in a case like this. In 2016, this Court approved $550.00 hourly to my colleague Jeffrey Rothman, for the terrific civil rights litigation in *Bailey v. Pataki*, 08-CV-8563 (JSR), 2016 WL 3545941 (S.D.N.Y. June 16, 2016). At the time, the Court noted Mr. Rothman had "at least a decade" of experience, and that the $550.00 hourly was not even on the higher end of prevailing market rates for civil rights work. I have more than twice that period of criminal and civil rights litigation experience, and the US Bureau of Labor Statistics Inflation Calculator pegs $550.00 in January 2016 at $744.72 as of April 2025.[1]

15. In *Cruz v. Tucker*, 14-CV-4456 (JSR), 2017 WL 1093285 (S.D.N.Y. Mar. 10, 2017), this Court again surveyed the attorneys' fee landscape. There, the Court granted $675.00 per hour to two senior partners who litigated the matter, $888.17 in today's dollars.[2] It is true that both *Bailey* and *Cruz* involved complex litigation far more esoteric than this case. But the modest $675.00 I request readily accounts for that difference.

---

[1] https://www.bls.gov/data/inflation_calculator.htm

[2] https://www.bls.gov/data/inflation_calculator.htm

5

16.     This entire fee calculation endeavor is far from a science. The Supreme Court and the Second Circuit have characterized and recharacterized the applicable tests over the years and leave it ultimately to the courts to determine with exactitude what is inexactly "reasonable", and what the market might bear at any particular moment, for any particular case. This Court presided over the trial and has a firm understanding of the risks my firm took, the quality of representation, the results achieved, and the attorneys' fees landscape. I am respectfully confident the Court will grant the fees I request here.

17.     Finally, Plaintiff seeks reimbursement of necessary trial expenses in the amount of $2635.60. "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).

18.     For the foregoing reasons, Plaintiffs' fee application, for an award of $70,605.00 in fees and $2635.60 in reimbursed expenses, should be granted, together with such other and further relief as is just and proper.

Brooklyn, New York
August 1, 2016

                                                  Stoll, Glickman & Bellina, LLP
                                                  Attorneys for Plaintiff
                                                  300 Cadman Plaza W., 12th Flr.
                                                  Brooklyn, NY  11201
                                                  (718) 852-3710

By: _____
       Andrew B. Stoll