UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN STEWART,<br><br>      Plaintiff,<br><br>  -against-<br><br>STEPHANIE DAVIS and BRIAN HIRSCHMAN,<br><br>      Defendants. | 22-cv-3583(JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

After a four-day trial, a jury found the defendants, former police officers Stephanie Davis and Brian Hirschman, liable for unlawfully detaining plaintiff Shawn Stewart without reasonable suspicion in violation of 42 U.S.C. § 1983, but not liable for applying excessive force. The jury then awarded Mr. Stewart $25,000.00 in damages. After trial, the Court denied the defendants' motion for judgment as a matter of law based on qualified immunity and determined that Corporation Counsel's decision not to indemnify the defendants was neither arbitrary nor capricious. The only issue that remains to be decided in this case is the amount of attorney's fees to which Mr. Stewart's counsel, Andrew Stoll, Esq., is entitled. For the reasons stated below, the Court grants the motion for attorney's fees in part and awards Mr. Stoll $40,291.00 in fees and costs.

I.    Background

In the early hours of September 25, 2019, New York City Police Department ("NYPD") officers, Stephanie Davis and Brian Hirschman, responded to a radio call reporting a domestic assault in Apartment 16-G at 140 Asch Loop, Co-op City. The defendants' patrol-car tablet was not working, so the only description that they had of the suspect was that he was "male." See ECF No. 82 at 2. By mistake, the defendants drove to 140 Alcott Street, a different building in the same neighborhood.

After arriving at 140 Alcott Street, the defendants took the elevator to the sixteenth floor. When the elevator doors opened, they encountered plaintiff Shawn Stewart, who was waiting by the elevator call button. Officer Davis asked Mr. Stewart where he was coming from, to which Mr. Stewart replied only "an apartment." Id. Mr. Stewart then refused to answer any additional questions from the officers. After some time, Officer Davis asked Mr. Stewart, "Do you want us to handcuff you?" Id. at 3. Mr. Stewart responded "Sure, go ahead," turned, and put his hands behind his back. Id. Officer Hirschman then handcuffed Mr. Stewart.

For roughly twenty minutes, the defendants continued to question Mr. Stewart to no avail. During that period, they told a supervising lieutenant by phone that Mr. Stewart did not fit the assault report, but that he was "giving [them] a hard time." Id. The lieutenant later confirmed that Mr. Stewart worked, but did

not live in, the building and ordered the officers to remove the
handcuffs.

In the months that followed, the Civilian Complaint Review
Board ("CCRB") investigated this incident and found that the
defendants had violated various departmental rules. Specifically,
the CCRB found that Officer Davis had abused her authority by
stopping, frisking, searching, and threatening to arrest Mr.
Stewart, as well as by blocking his recording device. The CCRB
similarly found that Officer Hirschman had abused his authority by
unlawfully stopping and questioning Mr. Stewart. Both officers
ultimately pleaded guilty to those findings.

On May 3, 2022, Mr. Stewart filed suit against the defendants,
alleging unlawful detention and excessive force under 42 U.S.C.
§ 1983. The defendants answered and filed a third-party complaint
against the City of New York (the "City") seeking indemnification.
The Court bifurcated their indemnification claim, ruling that it
would decide the indemnification issue as a matter of law if the
jury found the officers liable for either of Mr. Stewart's claims.
Following discovery and unsuccessful mediation, the case went to
trial. Four days later, a jury found the defendants liable for
unlawful detention, but not liable for excessive force. The jury
then awarded Mr. Stewart $25,000.00 in compensatory damages.

After trial, the defendants moved under Federal Rule of Civil
Procedure 50(b) for judgment as a matter of law that they were

3

entitled to qualified immunity. The Court denied their motion, holding that no reasonable officer could have believed that there was reasonable suspicion to detain Mr. Stewart under the circumstances.

Having lost on liability and immunity, the defendants sought indemnification from the City under N.Y. General Municipal Law § 50-k. The City's Corporation Counsel denied both of their requests, citing the defendants' guilty pleas to the CCRB's findings and concluding that their conduct had violated NYPD rules and was intentional or reckless. The defendants then asked the Court to overturn that denial and order indemnification as a matter of law. However, because the Corporation Counsel's decision was neither arbitrary nor capricious, the Court was bound to deny their motion.

Because a plaintiff prevailing on a section 1983 claim is entitled to recover reasonable attorney's fees, Mr. Stoll, as counsel for plaintiff, has now moved for attorney's fees, seeking $73,240.60 consisting of $70,605.00 for 104.6 hours of work, billed at $675.00 an hour, plus $2,635.60 in out-of-pocket expenses. See ECF No. 83. He supplements his request with detailed time sheets and a supporting declaration. See ECF Nos. 85, 85-1, 85-2 & 85-3. For the reasons stated below, the Court grants the motion in part and awards Mr. Stoll $40,291.00 in attorney's fees and costs.

II.  Legal Standard

Attorney-fee applications in section 1983 cases are governed by 42 U.S.C. § 1988(b) and Federal Rule of Civil Procedure 54(d)(2)(B). Section 1988(b) provides that, in any action to enforce § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Rule 54(d)(2)(B) further requires that a fee motion be filed no later than fourteen days after entry of judgment, specify the judgment and the authority entitling the movant to any fees, state the amount sought or a fair estimate of it, and, if the Court so orders, disclose the terms of any existing fee agreement. See Fed. R. Civ. P. 54.

The Supreme Court has established a two-step method for calculating attorney's fees. First, a district court must compute the "lodestar calculation," which is defined as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[1] Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As for the number of hours, the fee applicant must submit "evidence supporting the hours worked and rates claimed," and the court must exclude hours not "reasonably expended." Id. at 433-34. As for the hourly rate, the court must ask "what rate a paying

---

[1] Case quotations omit all internal alterations, brackets, citations, emphases, ellipses, quotations, and quotation marks.

client would be willing to pay." <u>Arbor Hill Concerned Citizens</u> <u>Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008). The court must then calculate the rate according to the prevailing rates in the district in which the court sits," <u>Simmons</u> <u>v. New York City Transit Auth.</u>, 575 F.3d 170, 173 (2d Cir. 2009), and weigh the attorney's "skill, experience, and reputation." <u>Farbotko v. Clinton Cnty. of New York</u>, 433 F.3d 204, 210 (2d Cir. 2005). The "novelty and complexity" of the matter may be accounted for in either the rate or the hours. <u>Perdue v. Kenny A. ex rel.</u> <u>Winn</u>, 559 U.S. 542, 543 (2010).

After computing the lodestar, "the district court can adjust the fee upward or downward" to reflect the "results obtained." <u>Hensley</u>, 461 U.S. at 435. In assessing the "results obtained," the "most critical factor is the degree of success obtained." <u>Id.</u> at 436. In assessing the "degree of success obtained," the court must consider "the quantity and quality of relief obtained" and compare the attorney's results "to what the plaintiff sought to achieve as evidenced in her complaint." <u>Barfield</u>, 537 F.3d at 152. Relevant considerations include how many claims the plaintiff won and the amount of compensatory damages a jury awarded to her. <u>See Kassim</u> <u>v. City of Schenectady</u>, 415 F.3d 246, 256 (2d Cir. 2005).

The Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the

litigation." Id. at 252. However, disproportionality is still a factor and may justify a reduction in extreme cases, such as where attorney's fees would be "more than seven times the amount of the monetary judgment obtained." City of Riverside v. Rivera, 473 U.S. 1315, 1319 (1985).

The Second Circuit also permits recovery of other "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Those expenses must be "reasonably necessary." Anderson v. City of New York, 132 F. Supp. 2d 239, 246 (S.D.N.Y. 2001). Accordingly, "deposition transcripts need not be introduced into evidence at trial in order to be taxed as costs; it suffices that at the time the deposition was taken it was reasonably expected that the transcript would be used for trial preparation." Id.

III. Discussion

Turning first to the loadstar, the Court accepts Mr. Stewart's figure of 104.6 hours of work, which is supported by contemporaneous records and the supporting declaration. See ECF Nos. 85-2 & 8-3. However, the Court concludes that the hourly rate of $675.00 is somewhat excessive for at least three reasons.

First, it does not reflect what a reasonable client would pay. Indeed, Mr. Stoll appears to concede as much in the declaration he submitted in support of the instant motion, stating

that "for [his] civil rights clients," the "market rate is currently billed at the rate [of] $450.00/hour." ECF No. 85 ¶ 10. An approximately fifty percent premium above counsel's market rate is unwarranted.

Second, $675.00 exceeds prevailing rates in this District for this kind of case. "[H]ourly rates for experienced civil rights attorneys in this District [S.D.N.Y.] range from $250.00 to $600.00, and hourly rates for less-experienced associates range from $200.00 to $350.00, with rates increasing over time." Penz v. Washer, No. 18-cv-4964, 2024 WL 3594572, at *5 (S.D.N.Y. July 30, 2024). Recognizing that Mr. Stoll is an experienced and skilled civil rights attorney, his rate nevertheless exceeds the accepted range. Mr. Stoll's attempts to justify his rate by adjusting it based on change in the Consumer Price Index (CPI), see ECF No. 86 ¶¶ 14-15, is unavailing. This is both because it does not comport with Second Circuit law, see Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006), and, independently, because Mr. Stoll offers no evidence linking his rates to CPI data.

Third, the modest complexity of this case does not justify a $675.00 rate. Section 1983 claims for unlawful seizure and excessive force have been litigated for decades and this case did not present a matter of first impression for the Court. See Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007). Moreover, Mr.

Stewart's complaint raised only two claims and all the conduct necessary to prove them was captured by the officers' body cameras.

It is true, as Mr. Stoll notes, that in Cruz v. Zucker, No. 14-cv-4456 (JSR), 2017 WL 1093285, at *3 (S.D.N.Y. Mar. 10, 2017), the Court approved a $675.00 rate. However, Cruz was a statewide class action that asserted six claims, had a lengthy procedural history that included an appeal to the Second Circuit, and required specialized expertise in areas such as gender dysphoria and Medicaid coverage. The complexity and breadth of that litigation bear little resemblance to this very simple 1983 case. Accordingly, adopting the same $675.00 rate for plaintiff's counsel would be unwarranted.

For all these reasons, the Court finds that an hourly rate of $450.00 is appropriate. Recognizing that Mr. Stoll's experience is substantial, but that the case was more-or-less straightforward, a rate of $450.00 positions him at the midpoint of the market range. Accordingly, the Court credits Mr. Stoll the full 104.6 hours, but reduces his rate to $450.00, generating a lodestar of $47,070.00 at the first step of the analysis.

As to the second, "degree-of-success," step, the Court concludes that the lodestar should be further reduced for two reasons. First, given that the jury rejected one of Mr. Stewart's two claims, Mr. Stoll's success was moderate. And second, his original request of $70,605.00 is almost three times the size of

Mr. Stewart's compensatory award of $25,000.00. Even the adjusted lodestar remains nearly double that figure. Accordingly, the Court concludes that a twenty-percent decrease is appropriate, yielding a final award of $37,656.00, which is still roughly fifty percent higher than the amount that the jury awarded to Mr. Stewart.[2]

Mr. Stoll also seeks $2,635.00 in out-of-pocket expenses. The service and filing fees were necessary to initiate and participate in this litigation. Moreover, the transcript charges were reasonable because the materials were used both for trial preparation and at trial. The Court therefore awards the full $2,635.00 amount.

IV.  Conclusion

For the reasons set out above, the Court grants in part the instant motion and awards $40,291.00 in attorney's fees and costs, for which Officers Davis and Hirschman are jointly and severally liable.[3] Payment should be made directly to Mr. Stoll. The Clerk of Court is directed to close ECF No. 84 and close the case.

SO ORDERED.

New York, NY
Aug 8 , 2025
JED S. RAKOFF, U.S.D.J.

---

[2] This Court has made similar adjustments in analogous cases. See, e.g., Green v. Torres, 290 F. Supp. 2d 427, 431 (S.D.N.Y. 2003), aff'd, 361 F.3d 96 (2d Cir. 2004).

[3] Here, as in its previous fact-bound rulings in this case, the Court continues to believe the City of New York should reconsider its prior rulings and indemnify the Officers for these fees.